IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| USI INSURANCE SERVICES, LLC, a foreign limited liability company, and KIBBLE & PRENTICE HOLDING COMPANY, a foreign corporation doing business as USI INSURANCE SERVICES NORTHWEST,<br><br>        Plaintiffs,<br><br>   v.<br><br>MICHAEL AITKIN and ALLIANT INSURANCE SERVICES INC.,<br><br>        Defendants. | No. 3:21-cv-00267-HZ<br><br>OPINION & ORDER |

Lindsey D. G. Dates
Mariah A. Whitner
Barnes & Thornburg LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606

Naomi Levelle Haslitt
Iván Resendiz Gutierrez
Miller Nash LLP
111 SW Fifth Avenue
Portland, OR 97204

    Attorneys for Plaintiffs

1- OPINION & ORDER

Debra L. Fischer
Seth Gerber
Veronica Lew
Morgan, Lewis & Bockius LP
2049 Century Park East, Suite 700
Los Angeles, CA 90067

William S.T. Wood
Andrea R. Meyer
Sussman Shank, LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205

  Attorneys for Defendants

HERNÁNDEZ, District Judge:

  Plaintiff USI Insurance Services, LLC and its subsidiary Kibble & Prentice Holding Company, d/b/a USI Insurance Services Northwest (collectively "USI") move to exclude Defendants' expert witness on damages Charles Wilhoite. Defendants Michael Aitkin and Alliant Insurance Services, Inc. ("Alliant") move to exclude Plaintiff's damages expert Robert Sly. For the reasons stated below, the Court denies Defendants' motion and grants in part Plaintiff's motion.

## BACKGROUND

  Plaintiff USI brings claims against Defendant Michael Aitkin, a former employee of USI, for breach of contract and against Aitkin's current employer Alliant for intentional interference with economic relations. Plaintiff claims that Defendant Aitkin breached his Employment Agreement by soliciting, accepting, and diverting the business of his former USI clients on behalf of and with the aid of Alliant. The case is scheduled to proceed to a jury trial on Plaintiff's claims.

  Plaintiff has retained Robert S. Sly, Jr., ASA, MBA to testify at trial regarding monetary damages suffered by USI due to clients it lost as a result of Aitkin's alleged breach of contract

and Alliant's alleged intentional interference with economic relations. Plaintiff has submitted Sly's Expert Report in which he calculates Plaintiff's damages from business USI lost when Aitkin's former clients moved their accounts to Alliant. Wood Decl. Ex. 1, ECF 200-1. Defendants object to Sly's expert testimony and opinions, arguing that his "methodology is fatally deficient and unreliable." Def. Mot. to Exclude Expert Test. 2, ECF 199.

Defendants have retained Charles Wilhoite as a rebuttal expert on damages and have provided his Expert Report, in which he provides four alternative damages calculations. Dates Decl. Ex. A, ECF 202-1. Plaintiff objects to Wilhoite testifying on his first two alternative calculations. Plaintiff also seeks to prohibit Wilhoite from offering opinions suggesting that damages should be reduced for an "avoided commission expense."

## STANDARDS

Under Federal Rule of Evidence 702, a qualified expert witness may testify if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The Court must exercise its gatekeeping function and ensure that expert testimony is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "Trial judges are given broad discretion to determine whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case." *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006) (citation omitted).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044


(9th Cir. 2014) (citation and quotation marks omitted); *see also Est. of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) ("Relevancy simply requires that [t]he evidence . . . logically advance a material aspect of the party's case.") (citation and quotation marks omitted) (alterations in original). The reliability inquiry is a flexible one. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150–53 (1999) (finding that whether the Daubert factors are "reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine"). Expert testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *City of Pomona*, 750 F.3d at 1044 (citation and quotation marks omitted).

"In evaluating proffered expert testimony, the trial court is a gatekeeper, not a fact finder." *Id.* at 1043 (citation and quotation marks omitted). "The test is not the correctness of the expert's conclusions but the soundness of his methodology, and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony." *Id.* at 1044 (citation and quotation marks omitted). Challenges to the weight of the evidence and the expert's credibility are for a jury, not a trial judge, to evaluate. *Id.*

## DISCUSSION

### I.  Defendants' Motion to Exclude Plaintiff's Expert Testimony

Defendants do not contest Sly's expertise or qualifications to render an expert opinion. Rather, Defendants assert that the methodology Sly uses in his Expert Report to calculate damages is flawed and unreliable. In determining the value of the book of business of USI's lost client accounts, Sly uses a market approach. Sly calculates the value of these accounts by applying a multiple of earnings before interest, tax, depreciation, and amortization ("EBITDA")

margin for accounts USI had acquired from its predecessor, CHS. Sly then researched publicly available data from three separate sources on insurance brokerage acquisitions to determine a range of multiples (11.0x, 12.0x, 13.0x, and 14.0x) to apply to the EBITDA margins. He then calculated a range of damages by multiplying the EBITDA margins overall and for each individual client account by the range of multiples he identified.

Defendants object to Sly's methodology on several grounds. First, Defendants argue that Sly's comparative market approach methodology is unreliable because he did not check the reasonableness of his calculations against a discounted cash flow ("DCF") analysis. Relying on a bankruptcy case from the Southern District of New York, Defendants argue that the DCF analysis is the most reliable method for determining the value of a business. *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 689 (S.D.N.Y. 2003) ("Many authorities recognize that the most reliable method for determining the value of a business is the discounted cash flow ('DCF') method."). In *Lippe*, the court held that the DCF method should at least be used as "a check" on other methods of calculation. *Id.* However, the Southern District of New York recognized in a later case that "it would be wrong to conclude that there is a categorical requirement that any valuation analysis be supported by DCF calculations." *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 179 (S.D.N.Y. 2006). And "the need for conducting a DCF analysis as a check on other methods is not as critical in instances where the initial analysis is more trustworthy." *Id.* at 180.

Other courts have held that a market analysis is preferable to the DCF method of valuation. *See Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 835 (7th Cir. 1985) ("The value of a firm is just what it, or its assets, will fetch in the market."). Courts have noted that a DCF analysis is "highly sensitive to assumptions about . . . costs and rate of growth" and "[DCF]

studies may be necessary when there is no other way to find value, but they are not the best way." *Id.* at 836. In accord with the court's reasoning in *Metlyn Realty Corp.*, Sly justifies his methodology by stating "[t]he market approach requires fewer subjective assumptions than alternate valuation approaches[.]" Wood Decl. Ex. 1. The Court finds that Sly's market approach is a reasonable methodology to determine damages and falls within the industry standard for valuation of lost client accounts. His failure to check his calculations using a DCF analysis does not render his methodology unreliable under Federal Rule of Evidence 702.

Next, Defendants argue that Sly used the wrong revenue multiples in his damages calculations. But Defendants do not adequately show why the multiples Sly chooses are inappropriate. Although Defendants object to some of the inputs in his calculations, they do not show that his methods are unreliable such that his testimony should be excluded. The disagreement about which multiples should be used goes to the weight of his testimony, which a jury must assess. *See Brown v. Brewer*, No. CV 06-3731-GHK (SHx), 2010 WL 2472182, at *28 (C.D. Cal. June 17, 2010) ("[T]he deviation from management's projections, the use of an arguably aggressive terminal multiple, and the alleged selection of the most profitable guideline companies are proper subjects for cross-examination.").

Lastly, Defendants claim that Sly calculated average EBITDA margins using data from the wrong region—USI's Mountain Region. Defendants note that all of Aitkin's clients at the time he left USI were in USI's Northwest Region, which includes Oregon and Washington. But all of USI's accounts that Aitkin serviced were included in USI's Mountain Region until a few months before Aitkin resigned. Thus, the Court finds Sly's use the Mountain Region's EBIDTA margin percentages to be reasonable.

6- OPINION & ORDER

The Court finds that Plaintiff's expert witness has the appropriate specialized knowledge to render an expert opinion. The methodology he used in his Expert Report is acceptable and was applied appropriately. Defendants' criticisms of the Expert Report are relevant to the weight of Sly's testimony but do not undermine the reliability of the methodology he used. Accordingly, Defendants' motion to exclude Sly's expert testimony is denied.

## II.     Plaintiff's Motion to Exclude Defendants' Expert Testimony

In his Expert Report, Defendants' expert Wilhoite provides four "alternative" calculations of potential damages. Dates Decl. Ex. A. Plaintiff moves to exclude testimony on Wilhoite's first two alternative calculations. Plaintiff also seeks to prohibit Wilhoite from offering opinions suggesting that damages should be reduced by an "avoided commission expense."

### A.     Alternative Damages Calculations

In his first alternative opinion, Wilhoite states: "Should the jury determine that there is no liability and causation attributable to the Act, it is my opinion that the economic damages suffered by USI are zero." Dates Decl. Ex. A, at 8. Plaintiff argues that this statement is an opinion on liability rather than an expert opinion on damages. But Wilhoite bases his opinion on what he determines to be a normal client rate of attrition when an insurance broker leaves USI. The Court finds that Wilhoite's testimony about an expected client attrition rate is an appropriate expert opinion, which will be subject to cross-examination at trial. So long as Wilhoite does not testify about his opinion on Defendants' liability, the Court declines to exclude his testimony.

In his second alternative opinion, Wilhoite provides a value of damages should the jury determine that "the resulting damage is defined by the 18-month restrictive period" during which Defendant Aitkin is prohibited from soliciting his former clients. Dates Decl. Ex. A, at 9-11.

Plaintiff seeks to exclude this testimony. Plaintiff argues that Wilhoite's calculation that limits damages to an 18-month period is too speculative because it assumes all the clients who left USI for Alliant would have left anyway when the restrictive period ended. Defendant points to several reasons why a jury could conclude that USI would have lost those clients very shortly after the 18-month restriction period ended, including the fact that the clients had already left and many expressed that they were dissatisfied with the service they received at USI. The Court finds that Wilhoite may testify about the reasonableness of using an 18-month period to determine the appropriate amount of damages if an 18-month limitation is typical based on his experience. Wilhoite's opinion is subject to cross-examination. But Wilhoite may not base his expert opinion testimony on the Court's holding that the restrictive covenants in Aitkin's employment agreement are enforceable up to 18 months.

With these limitations, Wilhoite may provide his expert opinion on his first two alternative damages calculations. Plaintiff's motion to exclude this potion of Defendants' expert witness testimony is denied.

      B.    **Mitigation of Damages: "Avoided Commission Expense"**

In his Expert Report, Wilhoite reduces the calculations in each of his four "alternative calculations" by 20% for an "avoided commission expense." Dates Decl. Ex. A, at 16-20. Wilhoite opines that for each of Aitkin's clients who took their business from USI to Alliant when Aitkin resigned, USI reduced its costs by 20% of client revenue because it did not have to pay a commission to Aitkin. He reasons that as a typical mitigation measure, USI would have assigned Aitkin's clients who remained at USI to brokers who charge a lower or no commission. In his Expert Report, Wilhoite assigns this 20% cost savings to reduce damages for each of the client accounts who left USI.

The Court finds that Wilhoite's reasoning is flawed. Courts have recognized an "offset" to damages in similar cases in which lost client accounts saved the plaintiff company from the overhead expense of servicing those accounts. See *Tersuli Constr. Servs., LLC v. Miletich*, 13 Wash. App. 2d 1061, 2020 WL 3268044, at *10 (Wash. Ct. App. May 18, 2020). But here, any savings that USI realized because it no longer had to pay a commission to Aitkin was unrelated to clients who left. In other words, it was Aitkin's departure that may have resulted in lower expenses for USI, not the loss of his clients. Aitkin's resignation from USI is not the subject of the claims in this case. Rather, the claims are that he breached his contract, with the aid of Alliant, by soliciting and accepting the business of his former USI clients. Because any lower costs that may have been realized by USI are disconnected from the claims here, the Court declines to allow Wilhoite's inclusion of a 20% reduction for "avoided commission expense" due to Aitkin's departure.[1] Plaintiff's motion to exclude from Wilhoite's expert testimony reference to damages mitigation through an avoided commission expense is granted.

///
///
///
///
///
///
///

---

[1] In its supplemental briefing, Defendants stipulate to excluding Wilhoite's testimony on this subject: "Unless Plaintiffs open the door at trial to issues concerning avoided expense commission, Defendants' damages expert, Charles A. Wilhoite, will not opine at trial concerning the cost savings of plaintiffs by re-assigning remaining clients to employee-brokers/managers who either receive a lower commission than the former producer who left the brokerage firm, or no commission at all[.]" Def. Suppl. Resp. Pl. Mot. to Exclude 2, ECF 222.

## CONCLUSION

The Court DENIES Defendants' motion to exclude the testimony of Plaintiff's expert witness testimony [199]. The Court GRANTS in part and DENIES in part Plaintiff's motion to exclude Defendants' expert witness testimony [201]. Specifically, the Court grants Plaintiff's motion to exclude testimony by Defendants' expert about mitigation of damages through an avoided commission expense. The Court otherwise denies Plaintiff's motion.

IT IS SO ORDERED.

Dated    September 21, 2022

_____
MARCO A. HERNÁNDEZ
United States District Judge

10- OPINION & ORDER